# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

| | |
|---|---|
| AUTO-OWNERS INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Civil Action No. CV-05-S-424-NW |
| ONEBEACON INSURANCE COMPANY, RONALD E. WARREN, and STEVEN MODAS, ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

This action is before the court on plaintiff's motion for summary judgment (doc. no. 13). Plaintiff Auto-Owners Insurance Company brought this declaratory judgment action against defendants OneBeacon Insurance Company, Ronald Warren, and Steven Modas, seeking a declaration that Auto-Owners is under no obligation to defend or indemnify Ronald Warren or Ronald Warren Builders, Inc., against the claims asserted by Steven Modas in Civil Action No. CV03-347, filed in the Circuit Court of Lauderdale County, Alabama.[1] Defendants OneBeacon Insurance Co. and Ronald Warren have filed responses in opposition to the motion for summary

---

[1] *See* doc. no. 1 (complaint).

judgment.[2]  Defendant Steven Modas has failed to answer this lawsuit or to respond to plaintiff's motion.[3]  Defendant Ronald Warren has filed a counterclaim against Auto-Owners alleging failure to defend and indemnify pursuant to a general commercial liability insurance policy, breach of the duty of good faith, and bad faith in denying benefits pursuant to said insurance policy.[4]

## PART ONE

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*

---

[2]*See* doc. nos. 15 and 17.

[3]The clerk of court entered default against defendant Steven Modas on September 30, 2005 (doc. no. 11).

[4]*See* doc. no. 5.  No answer to this counterclaim has been filed by Auto-Owners.  The parties do not address the counterclaim in the pending motion for summary judgment, and the deadline to file other dispositive motions has expired.  *See* doc. no. 9 (Scheduling Order).

*v. Catrett*, 477 U.S. 317, 322(1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

### PART TWO

*Summary of Relevant Facts*

The parties do not dispute the relevant facts.[5] On November 14, 1991, defendant Steven Modas ("Modas") purchased a residential dwelling located at 1654 Country Club Drive, in Killen, Alabama, from defendant Ronald Warren ("Warren") for the purchase price of $229,900.00. The dwelling was new at the time it was purchased and had been constructed by Warren. Portions of the residence were clad with an exterior insulation finish system, a synthetic stucco known as EIFS.

---

[5]The undisputed facts are located in plaintiff's brief in support of its motion for summary judgment and the responses in opposition to the motion for summary judgment. *See* doc. nos. 12, 15, 19.

In the Spring of 2003, approximately two or three months before the underlying lawsuit was filed, Modas had a contract to sell the house to Karen Jones.  Ms. Jones had an inspector examine the property, and he was the first person to notice problems with the EIFS.  The inspector found moisture and termites and pointed out areas of damage to Ms. Jones.  This was the first notice that Modas had of any problems with the EIFS.  Ms. Jones refused to purchase the house based on the inspection report.

Modas filed suit on May 30, 2003, in the Circuit Court of Lauderdale County, complaining that the EIFS applied to his house was defective and improperly installed in that the EIFS caused moisture to be trapped between the cladding and the structure, causing wood to rot and decay, steel to corrode, mold growth to be promoted and insect infestation to be promoted.  Count One of the state court complaint against Warren claimed breach of an implied warranty of habitability.  Count Two claimed breach of the duty of due care (negligence) in the construction of the home and the manufacture, design, and distribution of the EIFS.  Count Four against Warren claimed negligence or wanton construction of the dwelling by use of EIFS as exterior cladding; lack of proper control joints between dissimilar building materials; lack of kick out flashing, ground contact, and improper terminations of the EIFS system; and lack of proper beveling of the flat surfaces.

Auto-Owners issued to Warren a policy of business owners insurance with a

policy term of 12:01 a.m. June 22, 2003 to 12:01 a.m. June 22, 2004.  The Auto-Owners policy provides the following insurance coverage for a business owner's liability:

> 1. Business Liability.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies . . .
>
>     A.   This insurance applies only:
>          (1)   to "bodily injury" or "property damage":
>                (a)   That occurs during the policy period; and
>                (b)   That is caused by an "occurrence." The "occurrence" must take place in the "coverage territory."[6]

The policy defines "bodily injury" as meaning "bodily injury, sickness or disease sustained by a person including death resulting from any of these at any time."[7]  The policy further defines "property damage" as meaning "a. Physical injury to tangible property including all resulting loss of use of that property; or, b. Loss of tangible property that is not physically injured."[8]  The policy defines an "occurrence" as meaning " an accident, including continuous or repeated exposure to substantially the

---

[6]Doc. no. 1, Attachment A (ISO Form BP00060187 at 1).

[7]*Id*. at 11.

[8]*Id*. at 14, ¶ f.12.

same general harmful conditions."[9]

After filing the underlying lawsuit, Modas observed buckling of the "Dryvit" that wasn't present when the lawsuit was filed. The buckling was first noticed by Modas during an appraisal of the house in 2005. The buckling has caused Modas additional mental anguish.

## PART THREE

### *Discussion*

Plaintiff's argument is straightforward. The sole issue is whether the insurance policy was in force at the time of the loss. Plaintiff points out that the insurance contract provides coverage for occurrences that occurred between June 22, 2003 and June 23, 2004. The underlying suit was filed on May 30, 2003— more than three weeks *before* the effective date of the policy. Modas discovered the damage in the Spring of 2003, approximately three months *before* the effective date of the policy. In Alabama, in order to have coverage under a policy, the "occurrence" must happen *during* the policy period— not before, nor after. *See American States Insurance Co. v. Martin*, 662 So.2d 245 (Ala. 1995). Because the damages to the residential dwelling occurred and were discovered prior to the coverage period, Auto-Owners maintains it is entitled to summary judgment.

---

[9] *Id.* at 13, ¶ f. 9.

The most analogous reported decision is that of *U.S.F. &G. v. Bonitz Insulation Company of Alabama*, 424 So. 2d 569 (Ala. 1982). In that case, Bonitz entered into a contract for the construction of a roof and insulation on a gymnasium in Midfield, Alabama. At the time of the contract in 1972, and until 1977, Bonitz was insured by USF&G. The roof began to leak in the fall of 1972, and despite subsequent attempts to repair it, the roof had to be completely replaced in 1978. On January 1, 1977, the USF&G policy was not extended, and the coverage was taken over by Employees Mutual. When Employees Mutual assumed coverage, the roof had been leaking approximately four and one-half years.

The City of Midfield filed suit against Bonitz on August 18, 1977. Bonitz immediately notified both USF&G and Employees Mutual. USF&G denied coverage and Employees Mutual assumed the defense of the action under a reservation of rights. Bonitz then filed a declaratory judgment action. The Alabama Supreme Court concluded that when property damage began due to the roof leaks, there was an "occurrence" under the USF&G policy, and likewise coverage for those claims due to the roof leaks. With respect to Employees Mutual, however, the court concluded that the subsequent leaks were not "unusual, unexpected, or unforeseen, and therefore, not an accident" as defined under the policy. 424 So. 2d at 572. The absence of an accident precluded the existence of an "occurrence" under the

7

Employees Mutual policy. Key to the court's conclusion was the fact that repairs had been attempted for over four years with the real possibility that the roof would continue to leak every time it rained. As in *Bonitz*, the subsequent and progressive damage to the dwelling which is not repaired cannot be considered an "occurrence" under the Auto-Owners policy to trigger coverage.

Defendants' attempts to distinguish *Bonitz* are not convincing. More importantly, defendants fail to cite any Alabama authority that leads to a different conclusion. Defendant Ronald Moore contends that summary judgment is not appropriate because the damages suffered by Modas "could just as well be manifestations of more than one underlying cause, at different times, and hence difference 'occurrences,' triggering coverage" under the Auto-Owners policy.[10] But neither defendant offers any evidence to support this contention. If some of the damages claimed by Modas in the underlying lawsuit arose from an "occurrence" unrelated to the installation of the EIFS stucco that happened during the coverage period of the Auto-Owners policy, this would be the appropriate time to bring that evidence to the court's attention. Defendants have failed to do so. Accordingly, judgment for Auto-Owners is due to be granted on the issues presented in its motion for summary judgment.

---

[10]Doc. no. 15 at unnumbered p. 8 (Brief in Opposition to Summary Judgment).

## **Conclusion**

In light of the foregoing, plaintiff's motion for summary judgment is GRANTED. Because outstanding issues remain pending concerning a counter-claim filed by defendant Ronald Warren,[11] the court cannot close this file. The parties are ORDERED to file a status report no later than July 31, 2006, informing the court whether the remaining counter-claim is otherwise resolved in light of the court's ruling on plaintiff's motion for summary judgment, or whether further proceedings are necessary to resolve this outstanding counter-claim.

DONE this 27th day of July, 2006.

_____
United States District Judge

---

[11] *See* doc. no. 5.